CANTRELL *v*. MOORE.

5-81                                                    258 S. W. 2d 548

Opinion delivered June 1, 1953.

*Talley & Owen, Dean R. Morley* and *L. Gene Worsham,* for appellant.

*Clark & Clark,* for appellee.

GRIFFIN SMITH, Chief Justice. Donald Moore, alleging that he was engaged in the business of dusting cotton for Central Aero Service at Morrilton, sued Dennis Cantrell on an oral contract to dust cotton in the vicinity of Conway. He set out a joint venture by which each would receive half of the net profits. Moore conceded that he held $287.50 subject to distribution, but asserted that total earnings had been $8,664. Certain allegations relating to the use of oil and gasoline from Cantrell's supply service were made. Moore also mentioned the payment of $1,337.50 to Cantrell, but insisted that the correct balancing of debits and credits would show that $4,694.96 was still due him, as reflected by an itemized statement filed with the complaint.

In his answer and cross-complaint, as amended, Cantrell conceded that Moore was in charge of the airfield that he (Cantrell) held through lease, but asserted a verbal contract with an aviator named Van Brooks for

dusting and spraying. In consequence of Van Brooks' operations $5,341.55 was earned in 1951. Other claims advanced by Cantrell resulted in a net demand of $7,-080.08.

The court's findings were that Cantrell owed Moore $4,286.52, with interest at 6% from Oct. 3, 1952, for which judgment was rendered. The correctness of this finding is appealed from.

Appellee insists that the testimony is not properly before the court and urges that the bill of exceptions be disregarded.

All of the evidence was oral. The caption shows an order that the reporter take such testimony, transcribe it, and when so transcribed it should be "filed as depositions in said cause."

Section 3 of Act 139 of 1951 deals with evidence introduced orally in open court. Unless interested parties waive the requirement, "a complete record of the proceedings shall be made by the official court reporter or other reporter duly designated by the court, and upon the request of either party, or the chancellor, said record shall be transcribed, certified by the reporter as true and correct, and filed with the clerk of the court in which said proceedings were had. . . ."

Section 4 directs the clerk to give immediate notice "of the filing of the transcribed and certified record to the chancellor and counsel for the respective parties. The chancellor may, upon reasonable notice to counsel for all parties, approve and sign the record, or he may refer the record to counsel for their approval. In the event counsel cannot agree, the matter shall be presented to the chancellor, wherever found, who shall approve all or a part of the record, making such corrections therein as may be appropriate, all within the time limited for appeal. Upon the approval of the transcribed record, as herein provided, the same shall constitute a bill of exceptions and become a part of the record."

In the case at bar trial was had August 15th and the decree entered Oct. 3. The appeal was lodged here Jan-

uary 14th, 1953, and was, therefore, well within the time limit. But the only verification is the reporter's certificate and the clerk's endorsement. It has been held that this is not sufficient. Even before Act 139 became effective its salient purposes were given effect. In *Elvins v. Morrow,* 204 Ark. 456, 162 S. W. 2d 892, the necessity for verification of testimony was emphasized:—"The trial court (except as to a by-standers' bill of exceptions) is the final authority, and approval by the judge of what purports to be transcribed testimony is imperative unless brought into the decree or judgment, or unless the parties are in agreement. . . . The next inquiry is, What is meant by the expression found in § 1493 of Pope's Digest that a stenographer's transcription of oral testimony shall be filed with the clerk 'and treated as depositions taken in the regular manner?' Was it intended thereby to substitute a stenographer's certificate for the judge's approval of a bill of exceptions? We do not think so."

Act 139 has been construed on several occasions. *Bolls* v. *Craig,* 220 Ark. 880, 251 S. W. 2d 482, amended opinion on rehearing, p. 886; *Meadows* v. *Costoff,* 221 Ark. 273, 252 S. W. 2d 825; *Townson* v. *Townson,* 221 Ark. 610, 254 S. W. 2d 952. In the Meadows-Costoff case it was said that the clear purpose of § 3 was to definitely fix a uniform time for filing the bill of exceptions in chancery cases. This language was followed by a quotation from Act 139, "The chancellor may . . . approve and sign the record . . ." The opinion adds, "—meaning, of course, the record filed in accordance with § 3." Finally, there is this statement: "It is evident that the purpose of this Act No. 139 was to allow the chancellor to approve any bill of exceptions filed . . ."

In the Townson case reference to Act 139 is coupled with the declaration that ". . . it was essential that the bill of exceptions be approved within the time allowed."

We think the effect of these decisions is that in chancery cases the bill of exceptions must be approved by the

chancellor. Otherwise the testimony is not a bill of exceptions.

In order that the oversight in this case may not be charged to counsel as the contributing cause of the appellant's failure to prevail, it is only fair to say that a majority of the judges think the case would have to be affirmed on its merits.

Affirmed.